UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHON DUTTON,

                Petitioner,                No. 08-CV-0874(VEB)

    -vs-                                      **DECISION AND ORDER**

U.S. ATTORNEY GENERAL, et al.,

                Respondents.
_____

**I.     Introduction**

*Pro se* petitioner Shon Dutton filed the instant habeas petition pursuant to 28 U.S.C. § 2241 on or about December 1, 2008, while he was a State inmate in the custody of the New York Department of Corrections at the Livingston Correctional Facility, serving a state sentence of three years imprisonment with a five year term of post-release supervision for Sexual Abuse in the First Degree.

Previously, in January 2003, he had been sentenced in the United States District Court for the Western District of New York (Arcara, Chief District Judge) to a 57 month sentence with a three-year term of supervised release to follow for a charge of Felon in Possession of a Firearm. On January 31, 2006, he was released from the Federal Bureau of Prisons custody to supervised release.

While he was on federal supervised release, he was arrested on State rape charges in February 2007, which was the reason for his state court incarceration at Livingston Correctional Facility.

On March 2, 2007, he was sentenced to 21 months in the United States District Court for

the Western District of New York for violating the terms of supervised release based upon this new arrest on State-law charges. The Federal supervised release term commenced upon his release from the State sentence he was serving when he filed this Petition.

In his Petition, Dutton alleges the BOP erred in the execution of his supervised release violator term, because it should have commenced, but did not, upon the date it was imposed (March 2, 2007). Dutton seeks to have all time served in New York State custody and Federal custody credited against his Federal supervised release violator ("SRV") term. Dutton is challenging the computation of the length of his sentence by the Bureau of Prisons; that is, his Petition concerns the execution of the sentence, not its legality. Therefore, this petition is properly brought under 28 U.S.C. § 2241. *See Levine v. Apker*, 455 F.3d 71, 77-78 (2d Cir. 2006) ("A challenge to the execution of a sentence-in contrast to the imposition of a sentence-is properly filed pursuant to § 2241. Execution of a sentence includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'") (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001); other citations omitted).

## II.     Factual Background and Procedural History

On January 27, 2003, Dutton was sentenced in the United States District Court for the Western District of New York to a 57-month term of imprisonment with a three-year term of supervised release to follow for his conviction of the charge of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).

On January 31, 2006, Dutton was released from Federal custody as a result of good conduct time being credited against the 57-month Federal sentence.

On June 16, 2006, while on Federal supervised release, Dutton was arrested by New York State authorities pursuant to State-law rape charges and held in State custody pending disposition of the charges.

Also on June 16, 2006, a Federal arrest warrant was issued pursuant to the Notice of Federal Supervised Release Violation filed by the United States Attorney's Office ("the Government").

On January 24, 2007, the United States District Court for the Western District of New York issued a federal writ of habeas corpus *ad prosequendum* directing that Dutton be produced in the District Court on January 31, 2007. Accordingly, on January 31, 2007, Dutton was "borrowed" from the State authorities by the United States Marshal pursuant to this writ of habeas corpus *ad prosequendum*.

In District Court on January 31, 2007, Chief Judge Arcara read the Federal criminal charges based upon Dutton's supervised release violation to Dutton, who indicated he would admit to the charges.[1] On February 1, 2007, Dutton was returned to the custody of the State authorities in satisfaction of the Federal writ of habeas *ad prosequendum*.

On February 5, 2007, a second writ of habeas corpus *ad prosequendum* was issued directing that Dutton be produced in Federal court on February 8, 2007, for his plea hearing. Accordingly, on February 8, 2007, Dutton was borrowed from State authorities by the United States Marshals Service for his appearance in Federal court.

At the February 8, 2007, appearance, Dutton entered a guilty plea to the first charge of the Government's Petition for Warrant or Summons for Offender Under Supervision. The Plea

---

[1] A plea hearing was scheduled for February 8, 2007.

Agreement acknowledged the maximum sentence for the supervised release violator conviction was 24 months with a three-year term of supervision, less any term of imprisonment that was imposed upon revocation of supervised release. The Plea Agreement was silent as to whether the supervised release violator term was to run consecutively to, or concurrently with, the State term of imprisonment that would be imposed for the underlying criminal conduct (the alleged rape charges) giving rise to the supervised release violation.

On February 8, 2007, Dutton was returned to State authorities in satisfaction of the Federal writ.

On March 2, 2007, Dutton was borrowed again from the State authorities via a Federal writ of habeas corpus *ad prosequendum*. That day, March 2, 2007, he was sentenced in the United States District Court for the Western District of New York to 21 months for violating the terms of supervised release. The Federal Judgment and Commitment Order–like the Plea Agreement–was silent as to the relationship of the supervised release violator (SRV) term with any other sentence to which Dutton was or would be subject.

On May 16, 2007, he was sentenced in State court to a three-year term of incarceration followed by a five-year term of supervision for the sexual offense conviction.

Dutton was released from State custody during the pendency of the instant habeas Petition and is now serving his SRV term in Federal detention, at McKean Federal Correctional Institution.

As grounds for Federal habeas relief, Dutton asserts the following: (1) his Federal sentence should have commenced upon imposition because (a) the Federal sentencing court intended that its sentence run concurrently with the State sentence; (b) he should be in primary

Federal custody because the Federal sentence was imposed *prior* to the imposition of his State sentence, and (c) the State sentencing court intended that its sentence run concurrently with the Federal sentence.[2]

## III. Analysis of the Petition

### A. Computation of Sentence

In computing a Federal sentence, two separate decisions must be made: (1) when the Federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. *E.g.*, *United States v. Smith*, 812 F. Supp. 368, 370 (E.D.N.Y. 1993). For offenses committed on or after November 1, 1987, as Dutton's was, commencement of a Federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).[3]

#### 1. Commencement

As noted above, 18 U.S.C. § 3585(a) governs the commencement of a Federal sentence and provides in pertinent part as follows:

---

[2] *See*, *e.g.*, *Barden v. Keohane*, 921 F.2d 476, 477-78 (9th Cir. ) ("Barden says the federal authorities made a mistake in failing to designate the state prison as the place of confinement for his federal sentence. This designation, he argues, is a necessary prerequisite to carrying out the intention of the state sentencing court that his state sentence be served concurrently with his federal sentence. Barden claims that the federal authorities can and should correct their mistake by a nunc pro tunc exercise of their power to designate the place of confinement, and that he has a right to have an administrative determination of this issue because he would be eligible for an earlier release if the state prison were designated *nunc pro tunc* as a place for him to serve his federal sentence. The federal government insists that all that matters is the date Barden was turned over from state to federal custody and that the intention of the state court that Barden's state sentence run concurrently with his federal sentence is immaterial.").

[3] By enacting 18 U.S.C. § 3585, Congress vested the Attorney General authority to make sentencing credit determinations in 18 U.S.C. § 3585. United States v. Wilson, 503 U.S. 329, 333 (1992); Jake v. Hershberger, 173 F.3d 1059, 1066 (7th Cir. 1999). The Attorney General, under 28 C.F.R. § 0.96, delegated this authority to the Bureau of Prisons. United States v. Brann, 990 F.2d 98, 103104 (3d Cir. 1993). The interpretation of a statute by the agency charged with administering it is entitled to some deference, so long as its interpretation is not clearly erroneous or contrary to law or the constitution. See Reno v. Koray, 515 U.S. 50, 60, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995).

> Commencement of Sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). The underlying principle of 18 U.S.C. § 3585(a) is that a Federal sentence commences when the defendant is received by the Attorney General of the United States for service of his federal sentence. *Pinaud v. James*, 851 F.2d 27 (2d Cir. 1988); *Salley v. United States*, 786 F.2d 546 (2d Cir. 1986).

The *earliest* date a Federal sentence may commence is the date it is imposed.[4] A threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody (in this case, New York State or Local custody) at the time the Federal sentence was imposed. If the defendant was in primary Federal custody, the Federal sentence will commence upon imposition. 18 U.S.C. § 3585(a).

If, however, the defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the Bureau of Prisons must determine whether the Federal sentencing court expressly indicated its intent as to whether the federal sentence run concurrently with, or consecutively to, the non-Federal sentence. 18 U.S.C. §3584(a). If the Federal court expressly indicated an intention to have its sentence run *concurrently* with the non-Federal sentence, the Bureau of Prisons will designate the State correctional facility as the place for the defendant to serve his Federal sentence. In such cases, the Federal sentence will be deemed to commence upon imposition. *See* 18 U.S.C. §§ 3585(a), 3621(b). However, if the

---

[4] The Second Circuit has held that a sentence may not be ordered to commence at a date prior to its imposition. *United States v. Gonzalez*, 192 F.3d 350 (2d Cir 1999); *United States v. Labeille-Soto*, 163 F.3d 93 (2d Cir. 1998).

Federal sentencing court was silent as to whether it intended its sentence to run concurrently, the court's silence will be construed as an intent to impose a *consecutive* sentence. 18 U.S.C. § 3584(a). In such cases, the Federal sentence will commence only when primary non-Federal custody over the defendant is relinquished. 18 U.S.C. § 3585(a).[5]

## 2. Primary Custody

"As a general rule, the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration. *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir.1991); *accord, e.g., United States v. Gonzalez*, No. S-1 94 CR. 313 (CSH), 1998 WL 691080, (S.D.N.Y. Sept. 30, 1998). This jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence. *United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y.1993); *see also Roche v. Sizer*, 675 F.2d 507, 510 (2d Cir.1982) (" We find . . . that primary jurisdiction over [defendant] passed to [Federal authorities in] Connecticut when he posted bond on the Federal charges."). "[T]he sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial, function." *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir.1980; *see also Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922) ("The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject matter of the

---

[5] It should be noted that in cases where the defendant was in non-Federal primary custody at the time the Federal sentence was imposed, and the Federal sentencing court is silent as to its intent to run the federal sentence concurrently with the non-federal sentence, the defendant may ask the Bureau of Prisons for a retroactive designation of the non-federal prison as the institution for service of the federal sentence. 18 U.S.C. § 3621(b); *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991). In such cases, the Bureau of Prisons will consider the inmate's personal circumstances in relation to the various factors set forth at 18 U.S.C. § 3621(b) to determine if a *nunc pro tunc* designation is not inconsistent with the intent of the Federal sentencing court or the criminal justice system.

litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed to control, before the other court shall attempt to take it for its purpose."); *accord In re Liberatore*, 574 F.2d 78, 88 (2d Cir. 1978).

"This rule derives from the fact that the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities." *United States v. Smith*, 812 F. Supp. at 371 (citing *Whalen*, 962 F.2d at 361 n. 3; *In re Liberatore*, 574 F.2d at 79; *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir.1978) ("When an accused is transferred pursuant to a writ of habeas corpus *ad prosequendum* he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner."), *cert. denied*, 441 U.S. 934 (1979); *In re Sindona*, 584 F. Supp. 1437, 1442-43 (E.D.N.Y. 1984) (discussing purpose of writ of habeas *ad prosequendum*)).

Thus, when a Federal sentence is imposed upon a defendant who is in primary State or local custody, the non-Federal custodian (here, New York State) retains primary jurisdiction over the prisoner. Federal custody may not commence until the non-Federal custodian relinquishes the prisoner upon satisfaction of the prisoner's State obligation. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2001) (" [T]he law on this point is clear: a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner.") (citing *Jake v. Herschberger*, 173 F.3d 1059, 1061 n. 1 (7th Cir.1999); *Chambers v. Holland*, 920 F. Supp. 618, 623 (M.D. Pa.) ("The relief which petitioner seeks, i.e., to be given credit on his federal sentence for time served on [an *ad prosequendum*] writ issued by the federal court while he remained in the primary

custody of the state, is inconsistent with federal law. Section 3585 [of Title 18 U.S.C.] does not permit credit on a federal sentence for time served and credited against another sentence."), *aff'd*, 100 F.3d 946 (3d Cir.1996) (table); *United States v. Smith*, 812 F. Supp. at 371-72)), *superseded by statute on other grounds as stated in United States v. Saintville* (3d Cir. 2001); *see also Shumate v. United States*, 893 F. Supp. 137 (N.D.N.Y. 1995).

Here, at the time he filed his habeas Petition, Dutton was in the primary custody of New York State by virtue of his June 16, 2006, arrest by New York state authorities on sexual abuse charges. During the entire time that Dutton was in State custody pursuant to the June 16, 2006 arrest and subsequent conviction, the State (and/or Local) authorities did not "relinquish" primary custody over him. It is true that after Petitioner went into primary state custody, he was "borrowed" by Federal authorities pursuant to several Federal writs of habeas corpus *ad prosequendum* in order to effectuate his appearance in the United States District Court in connection with his arrest and conviction for a supervised release violation. However, the Federal warrant, arrest, prosecution, and sentencing did not terminate the non-Federal primary custody over Dutton. *E.g.*, *United States v. Smith*, 812 F. Supp. at 371; *see also Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990).

When a defendant is borrowed from the primary custodian via writ of habeas corpus *ad prosequendum*, principles of comity require the return of the defendant to the primary custodian when the prosecution has been completed. *Delima v. United States*, 41 F. Supp. 2d 359 (E.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000). In this case, the documentation submitted (e.g., the executed writs of habeas *ad prosequendum*) shows that each time Dutton was "borrowed" by Federal authorities by means of a writ of habeas *ad prosequendum*, he was

returned by the Marshal to the State (or Local) authorities, in satisfaction of the Federal writ.

The record does not establish that the State or Local authorities effectively relinquished primary jurisdiction over Petitioner any time prior to the imposition of his Federal sentence. The only support for this proposition is a statement by the State sentencing court, ordering that the State sentence run concurrently with Dutton's Federal sentence. *See* Transcript of State Sentencing Hearing, attached as Exhibit B (Docket No. 9-2) to Petitioner's Traverse (Docket No. 9). However, this is not a proper means of relinquishing primary custody. *See Jennings v. Schult*, 9:08-CV-00976-JKS, 2009 WL 838112, at *2 (N.D.N.Y. Mar. 27, 2009) ("Jennings further argues that BOP erred in not giving proper consideration to the judgment of the state court that the sentences be served concurrently. The short answer to that contention is that such a determination is not binding on federal authorities.") (citing *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) ("The state sentencing court *did* specify that the state sentence should run concurrently to the federal sentence. However, such a determination is not binding on federal authorities.") (emphasis in original) (citing *McCarthy v. Doe*, 146 F.3d 118, 120-21 (2d Cir.1998) ("[A]lthough petitioner emphasizes the state court's designation of its sentence to run concurrently with petitioner's federal sentence, we note that the state court's intent is not binding on federal authorities.") (citing *United States v. Sackinger*, 704 F.2d 29, 32 (2d Cir.1983) (holding federal court is not bound by terms of plea agreement between defendant and state authorities)), *aff'd* No. 09-1848-pr (2d Cir. May 17, 2010); *Barden v. Keohane*, 921 F.2d at 478 n. 4); *see also United States v. Gonzalez*, 1998 WL 691080, at *2 (S.D.N.Y. Sept. 30, 1998) ("[T]he Defendant here does not argue that New York State's original jurisdiction has been explicitly relinquished. Rather, Defendant contends that the state implicitly waived its priority of

jurisdiction by acquiescing in his federal prosecution and imposing a sentence to run concurrently with the federal sentence. This argument's flaw, however, is its reliance on a theory of relinquishment that does not exist. The Defendant cites, and my own research has uncovered, no case which endorses a theory of relinquishment through implied waiver. In light of the principles of comity at stake, I am reluctant to fashion a theory of relinquishment founded upon something other than an express and informed decision on the part of the state."). It appears the State sentencing court was under the mistaken belief that because Dutton was sentenced in Federal court first, he therefore was in primary Federal custody. As discussed above in this Decision and Order, that was not the case.

Because the record does not reflect that New York State or Local authorities expressly elected to relinquish primary jurisdiction over Petitioner any time prior to the imposition of his Federal sentence, the commencement date of Dutton's Federal sentence depends upon whether the Federal sentencing court intended its sentence on the supervised release violation run consecutively to, or concurrently with, his State sentence on the sexual abuse conviction. In Dutton's case, there was no such intention offered by then Chief Judge Richard J. Arcara; the transcript of the sentencing hearing is silent on this point. Therefore, the presumption that the Federal sentence shall run *consecutively* to the State sentence has not been rebutted. *See* 18 U.S.C. § 3584(a) (authorizing federal sentencing courts to impose concurrent or consecutive sentences). In addition, as noted by the United States Probation Officer in Dutton's Final Report of Violation of Supervised Release Sentencing, Section 7B1.3(f) of the United States Sentencing Guidelines advises that "[a]ny term of imprisonment imposed upon the revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment the

defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release."

Therefore, because Dutton was in primary State custody at the time his Federal sentence was imposed, and because the Federal sentencing court indicated no intention to have the Federal sentence run concurrently with any other sentence, Dutton's federal sentence should be deemed to have commenced upon the relinquishment of primary State custody, via Dutton's parole release to the Federal detainer, which occurred during the pendency of this Petition.

> B. **Retroactive Designation by the Bureau of Prisons of the State Institution for Service of Federal Sentence**

As respondent notes, Dutton may receive a retroactive designation of the State correctional facility for service of his Federal sentence, if the Federal Bureau of Prisons decides to grant such a designation after considering the factors set forth in 18 U.S.C. § 3621(b). In *Barden v. Keohane*, *supra*, the Third Circuit held that 18 U.S.C. § 3621(b) authorized the Bureau to retroactively designate the State correctional institution for service of an inmate's Federal sentence in cases in which the inmate was in primary non-Federal custody at the time the Federal sentence was imposed and where the Federal sentencing court did not expressly direct concurrent service of the Federal sentence. The Third Circuit indicated that when determining whether to exercise its discretion to effect a *nunc pro tunc* designation, the Bureau of Prisons should look to the factors set forth at 18 U.S.C. § 3621(b) for guidance. *Barden*, 921 F.2d at 482.

The Petition filed in this case was construed as a request to the Bureau of Prisons to retroactively designate the State institution as the place for service of his Federal sentence. As a result, on April 22, 2009, the Bureau of Prisons contacted the Federal sentencing court to

seek the court's position regarding this request. According to Respondent's Answer, the Federal court had not responded to the Bureau of Prisons correspondence. Respondent indicates that once the court indicates its position on this issue, the Bureau will review of the following five factors set forth at 18 U.S.C. § 3621(b): (1) the nature of Petitioner's criminal offense; (2) his history and characteristics; (3) any statement by the sentencing court; and (4) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2). Respondent indicates that under 18 U.S.C. § 3621(b), the Federal sentencing court's position is not dispositive, although it does carry great weight. If the Bureau of Prisons determines Petitioner is appropriate for receiving a retroactive designation, his Federal sentence will be deemed to have commenced upon imposition. If not, however, Dutton's sentence will be deemed to be consecutive to his State sentence. In such a case, his Federal sentence will have commenced upon relinquishment of primary State custody; here, such relinquishment has occurred since Dutton has been released to a Federal detainer from the State correctional facility and is now housed at a Federal correctional institution.

At the time Respondent filed his Answer, the Bureau of Prisons had not conducted a *Barden* review of Petitioner's request for a *nunc pro tunc* designation. In Petitioner's subsequently filed Traverse, there is no indication that the review has occurred. Until such a review is completed, Petitioner's federal sentence will be deemed to be consecutive to the State sentence.

The fact that a prior custody credit review and determination does not appear to have been made by the Bureau of Prisons raises issues of ripeness. Article III of the United States Constitution limits the Federal courts to deciding "cases" and "controversies." To ensure that any

matter presented to a Federal court meets that requirement, the Court considers the doctrines of standing, ripeness, and mootness. *See Poe v. Ullman*, 367 U.S. 497, 502-05 (1961). The most important of these doctrines is standing. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). " At its constitutional core, standing is a manifestation of the Article III case-or-controversy requirement; it is the determination of whether a specific person is the proper party to invoke the power of a federal court." *Coalition of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1157 (9th Cir.2002). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751. The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' ' not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

"Standing and ripeness are closely related doctrines that overlap 'most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical.'" *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n. 8 (2d Cir. 2008) (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir.2006); other citations omitted). The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *accord New York Civil Liberties Union v. Grandeau*, 528 F.3d at 131. The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of specific future harm. *Laird v. Tatum*, 408 U.S. 1, 14 (1972). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citations omitted).

In *Vaughn v. Smith*, No. 1:07-cv-00351-LJO-TAG HC, 2007 WL 1888807 (E.D. Cal. June 29, 2007), the inmate filed a 28 U.S.C. § 2241 petition claiming that Bureau of Prison's failure to conduct an immediate Residential Re-entry Center ("RRC") placement assessment for him violated the Federal courts' interpretation of certain regulations relating to RRCs and Bureau of Prison's exercise of discretion under 18 U.S.C. § 3621(b). 2007 WL 1888807 at *2. Because the BOP was not required to make an assessment in Vaughn's case for almost three more years, respondents argued that the petition was not ripe and should be dismissed. *Id.* at *4 ("The Court agrees with Respondent that Petitioner's claim is not ripe and that, therefore, he presently lacks standing under Article III. Even assuming, *arguendo*, that the petition properly challenged the validity of the Program Statement, that regulation does not, as Petitioner has suggested, improperly limit the discretion of BOP to make an RRC placement in any individual case. Rather, the regulation only requires that BOP make an RRC placement assessment at least eleven to thirteen months prior to the inmate's release date. Nothing in the Program Statement prevents the BOP, in the exercise of its statutory discretion, from making an earlier determination, although the Court is not aware of any statute or regulation that requires such expedited action by

the BOP.").

In *United States v. Rodriguez*, No. 1:94-cr-177, 2007 WL 927446, at *1 (W.D. Mich. Mar. 24, 2007), the defendant filed a 28 U.S.C. § 2241 petition asking the district court to award him credit for the eight months and four days in which defendant contends he was in the custody of the United States Marshal in pretrial detention. The district court first found that defendant's contention concerning his status as a pretrial detainee in Federal court appeared to be mistaken, the defendant was in State custody during the entire pendency of this case, and that his appearance before a district judge was procured by a writ of habeas corpus *ad prosequendum*. *Id* (citations omitted).[6] "More basically," the district court in *Rodriguez* found, it lacked authority to adjudicate defendant's claim for credit on his Federal sentence because the claim was unexhausted: To obtain judicial review of the execution of a federal sentence, a prisoner must have first exhausted his administrative remedies through the Bureau of Prisons, and an unexhausted claim is not ripe for adjudication. *Id.* (citing *United States v. Westmoreland*, 974 F.2d 736, 737-38 (6th Cir.1992)).

Here, Dutton's claim is not ripe because the Bureau of Prisons has not yet made a final determination as to state custody credit and calculated his official prison term. *Accord*, *e.g.*, *Osorio v. United States*, No. 98 CIV. 0284(DAB), 1998 WL 160873, at *1 (S.D.N.Y. Apr. 6, 1998) ("Petitioner's [habeas] claim is also not ripe because the BOP has not yet calculated

---

[6] *See* 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (Title 18 U.S.C. § 3585(b) only allows credit for time that has not been credited against another sentence); *Woody v. Marberry*, No. 05-1403, 178 Fed. Appx. 468, 471, 2006 WL 1083941, at **3 (6th Cir. Apr. 25, 2006) ("However, § 3585(b) only allows credit for time 'that has not been credited against another sentence.' *Wilson*, 503 U.S. at 334, 112 S.Ct. 1351. The time that Woody believes that the BOP should credit him was time he served on a state conviction. Therefore, the BOP did not err in calculating Woody's sentence."); *Rios v. Wiley*, 201 F.3d at 274 (3d Cir.2000) (finding that prisoner is not entitled to credit against his Federal sentence for time spent in Federal custody pursuant to a writ from State prison).

Petitioner's official term of imprisonment. The BOP, acting as the designee of the United States Attorney General, has the responsibility for computing a term of incarceration pursuant to 18 U.S.C. § 3586. An inmate's sentence is not officially calculated until the inmate is transferred to an institution designated by the BOP. On March 9, 1998, the BOP designated the Federal Correctional Institution, Fort Dix ('Fort Dix'), as Petitioner's official detention facility. Petitioner was transferred to Fort Dix on March 11, 1998, and staff at that facility will perform the official calculation of Petitioner's sentence. Because Petitioner has not yet received the official calculation of his term of imprisonment, his petition is premature.") (internal citations to record omitted; citing *United States v. Westmoreland,* 974 F.2d at 737 ("There can be no such case or controversy until the Attorney General makes a determination [regarding sentence credit] and [defendant] seeks judicial review of the determination. . . .Although an agency may waive the opportunity to change its mind, it may not waive (and thereby delegate to the district court) the responsibility to make up its mind in the first place. Until the Attorney General makes a sentence credit determination under section 3585(b), the case is not ripe for review by the District Court.")); *see also Westmoreland*, 974 F.2d at 737 n. 1 ("If the Attorney General should fail to make such determination, defendant could require he do so by mandamus, but that circumstance is not alleged to exist here. In addition, if the credit exceeded the sentence, habeas corpus relief would be available.").

In addition, there is the issue of exhaustion of administrative remedies. *See Rodriguez*, 2007 WL 927446, at *1 ("The calculation of credit against a federal sentence for pretrial detention is not a matter over which the federal district courts have original authority. The Attorney General is responsible for computing, in accordance with applicable statutes, any

pretrial detention credit. *See Wilson*, 503 U.S. at 334-36. Defendant must therefore apply to the BOP and exhaust his administrative remedies before that agency. If defendant is dissatisfied with this administrative determination of credit for time served, his judicial remedy is by writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Wilson*, 503 U.S. at 335.").

Finally, should Dutton file a subsequent Section 2241 habeas petition, it appears that he must do so in district court in Pennsylvania, since "[t]he only proper venue for filing a section 2241 petition is the district of incarceration, not the district in which the defendant was sentenced." *Id.* (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). Dutton should therefore seek Section 2241 habeas relief in the Western District of Pennsylvania, in which McKean Federal Correctional Institution is located. *See id.*

## IV. Conclusion

For the foregoing reasons, petitioner Shon R. Dutton's petition pursuant to 28 U.S.C. § 2241 is denied without prejudice. At this time, Dutton has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir.), *cert. denied*, 531 U.S. 873 (2000), and therefore the Court declines to issue a certificate of appealability. The Clerk of the Court is directed to close this matter on the docket.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: May 20, 2010
      Buffalo, New York.